# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 1:21CR234 |
| Plaintiff, | : : | |
| | : | JUDGE BENITA Y. PEARSON |
| -vs- | : : | |
| SANTON BARNES, | : : | **DEFENDANT BARNES'S** <br> **SENTENCNG MEMORANDUM** |
| Defendant. | : | |

Defendant Santon Barnes, through counsel, respectfully submits the instant Sentencing Memorandum to support her request for a sentence of 12 months and one day, with a mental health evaluation and treatment while incarcerated and while on supervised release, which is sufficient but not greater than necessary to achieve the statutory goals of sentencing under Title 18, United States Code §§ 3553(a) and 3661.

Respectfully submitted,

STEPHEN C. NEWMAN
Federal Public Defender
Ohio Bar: 0051928

*/s/Darin Thompson*
DARIN THOMPSON
Assistant Federal Public Defender
Ohio Bar: 0067093
1660 West Second Street, Suite 750
Cleveland, Ohio 44113
(216) 522-4856 Fax: (216) 522-4321
e-mail address: darin_thompson@fd.org

I. **Introduction**

Ms. Barnes was charged with 23 counts of aiding or assisting in filing a false return, in violation of 26 U.S.C. § 7206(2). (Dkt. 1, Indictment.) Ms. Barnes pled guilty to count one in the indictment pursuant to a Rule 11(c)(1)(A) and (B) plea agreement. The government agreed to dismiss the remaining counts in the indictment in exchange for Ms. Barnes's guilty plea to count one. The parties further agreed that the base offense level is 18-20, under §§ 2T1.4(a)(1) and 2T4.1(G) and (H). The parties also agreed an enhancement for the amount of the tax loss applied, and that the Court would determine the loss amount at sentencing. The government agreed not to argue for a loss amount greater than $1,463,917.00 and Ms. Barnes agreed not to argue for a loss amount lower than $345,352.00. The government agreed it would recommend a three-level reduction for acceptance of responsibility, provided Ms. Barnes's conduct reflected it. There was no further agreement regarding the sentencing range.

Ms. Barnes is now before this Court for sentencing. For the reasons detailed below, Ms. Barnes requests a sentence of 12 months and one day, which is sufficient but not greater than necessary to achieve the goals of sentencing.

II. **Applicable Advisory Guideline Range**

The PSR calculates Ms. Barnes's guideline range at 24 to 30 months, with a total offense level 17 and a criminal history category of I. (Dkt. 37: PSR, ¶¶ 28, 36, 55.) Ms. Barnes objected to the loss amount, which corresponds to a base offense level of 20. The PSR noted Ms. Barnes's objection but maintains the loss amount was over $550,000.00. *Id*. at 18; U.S.S.G. §§ 2T1.4; 2T4.1(H). Because Ms. Barnes's loss amount should be calculated at $345,352, her corresponding bases offense level should be 18. *See* U.S.S.G. § 2T4.1(G).

2

Ms. Barnes concedes she aided and assisted in filing false tax returns. *See* PSR, ¶ 17. The amount of loss imputed to her, however, is overstated. The government alleges Ms. Barnes assisted in preparing approximately 350 tax returns "between 2013 and 2017, several of which had fraudulent information." *See* PSR, ¶ 10. These returns were filed from four separate IP addresses. *Id.* at ¶ 13. Although Ms. Barnes has readily accepted responsibility for helping to prepare some of these returns, other clients were procured and their returns were prepared solely by her co-conspirator, Darnesha Jackson. *Id.* at ¶ 17. The government interviewed 17 of the fraudulent return tax filers, all of whom indicated Ms. Barnes collected tax information and helped prepare their returns. Because the government did not interview all of the filers, however, it has failed to prove Ms. Barnes, and not Ms. Jackson, is responsible for filing the remaining returns.

The government bears the burden of establishing the loss amount. *United States v. Vance*, 956 F.3d 846, 860 (6th Cir. 2020) (quoting *United States v. Poulsen*, 655 F.3d 492, 513 (6th Cir. 2011)). Its failure to interview all of the tax filers means it has not met its burden of establishing the loss amount it alleges. The Court therefore should not attribute the total loss amount to Ms. Barnes. Rather, it should hold Ms. Barnes accountable for only her portion of the loss.

Ms. Barnes estimates she collected about $600-900 per week over a 3-month tax season, with some variation, between 2013-17. Converting her $300 finder's fee to the amount of income she received means she received income from roughly 2-3 returns per week for 4 weeks for 3 months over 5 years, or around 150 returns. The mathematical equation would be $2.5 \times 4 \times 3 \times 5 = 150$ returns. The 150 number should then be divided by 347, the approximate number of fraudulent returns. Multiplying that number by the total loss amount of $803,146.00, leaves a product of approximately $345,253.00. This amount is the loss amount that should be attributed to

3

Ms. Barnes. The Court should use this loss amount figure when making its sentencing decision. It should calculate her base offense level at 18, under U.S.S.G. § 2T4.1(G), which corresponds to the loss amount calculation above.

With a base offense level of 18, Ms. Barnes's total offense level would be 15, after a three-level deduction for acceptance of responsibility. Because of her limited criminal history, placing her in criminal history category I, Ms. Barnes's advisory guideline range would be 18 to 24 months. For the reasons detailed below, Ms. Barnes requests the Court vary downward and sentence her to 12 months and one day.

**III.  A Sentence of One Year and One Day is Sufficient but Not Greater Than Necessary.**

Ms. Barnes certainly has known hard times. Yet her fight to be a positive force in the lives of those she knows reveals her true caring nature and her faith.

As a child, Ms. Barnes was sexually and physically abused by her stepfather, the only man she knew as a father figure after her biological father abandoned her. She also witnessed this same man physically abuse her mother while also abusing drugs and alcohol. *See* PSR, ¶ 41. Some who experience such a traumatic childhood might become abusive or neglectful parents themselves, perpetuating a cycle of abuse, or choose to forego parenthood altogether. But Ms. Barnes is a loving provider and caretaker for all of her children and grandchildren. Her own mother describes her as someone who is "loving, kind, with a big heart, who loves her children." *Id.* at ¶ 46. Her daughter describes her as a "beautiful person inside and out." (Exh. A, Letter from Santiana Compton.)

Even in her statement of acceptance Ms. Barnes describes how the offense she committed was in a desperate period of her life when her husband went to prison and she could not find

4

employment because of her criminal record. Her desperation was compounded by her profound need to protect and support her children as they had recently been evicted. *See* PSR, ¶ 17. At this most despairing period of her life, Ms. Barnes's instinct was to provide for her children. While she in no way offers these facts to justify the offense, her offense conduct also underscores her strong need to support and care for her children.

Because her children have lifted her up, Ms. Barnes suffered deeply when her son was murdered in August 2021. She still grieves his death and acknowledges feelings of deep depression since this loss. She recently met with a psychologist and believes she may benefit from medication to help her cope with the depression she still feels as a result of her son's death. *See* PSR, ¶ 48.

Despite this unthinkable loss, Ms. Barnes's faith and warm personality has never wavered. Her minister, Jamiel Perry, describes her as a "very caring and very loving person" who "extend[s] herself to help those around her." (Exh. B, Minister Jamiel Perry Letter.) Another minister states that her most notable attribute is "giving", and that Ms. Barnes gives of herself without thinking because she comes by it naturally. (Exh. C, Minister Lashona Toomer-Perry Letter.)

In most cases, the Court must do its best to predict whether a defendant poses a danger to any person or to the community, looking to things like past offenses, or perhaps past conduct while on probation or parole, and the like. Those factors are imperfect predictors of what a person will do once on supervised release, but in most cases, it is all the Court can rely on.

Here, Ms. Barnes's conduct since the time of the offenses is by all accounts exemplary. She has maintained steady employment, working two jobs for the past year. *See* PSR, ¶ 51. She has attended church regularly. Minister Toomer-Perry, who has known Ms. Barnes for the past three years, describes how she and her faith have evolved since they met, causing Ms. Barnes to "look

at life differently" and to truly find God. (Exh. C, Minister Toomer-Perry Letter.) In 2018, Ms. Barnes implemented a toy drive at Christmastime, partnering with Toys for Tots to provide over 300 families with toys for their children. (Exh. D, Lawanna Williams Letter.) When she is not working, Ms. Barnes's life now centers around attending and volunteering at her church.

Ms. Barnes's daughter, Demetria Compton, also provides insight into the growth Ms. Barnes has experienced since the offense as "changing her life around." She describes how her mother's life now is integrally involved with assisting her children with caring for her grandchildren. (Exh. E, Demetria Compton Letter; *see also* Exh. F. Endy Porter Letter.) The Court does not need to hypothesize how Ms. Barnes will conduct herself and order her life once released. She already has created the blueprint for her post-release life. The Court should consider not only Ms. Barnes's past traumas, but how she has endured and demonstrated resilience through love of family and faith. It should vary downward and sentence her to 12 months and one day.

IV.  **Conclusion**

After considering all the foregoing and the 18 U.S.C. § 3553(a) factors, Ms. Barnes respectfully requests a sentence of 12 months and one day, with a mental health assessment and treatment while in custody and on supervised release, which is sufficient but not greater than necessary.

Respectfully submitted,

STEPHEN C. NEWMAN
Federal Public Defender
Ohio Bar: 0051928

*/s/Darin Thompson*
DARIN THOMPSON

6

        Assistant Federal Public Defender
        Ohio Bar: 0067093
        Office of the Federal Public Defender
        1660 West Second Street, Suite 750
        Cleveland, OH 44113
        (216)522-4856 Fax:(216)522-4321
        E-mail: darin_thompson@fd.org